### MEEK v. TINKLE et al.
### No. 1103.

Court of Civil Appeals of Texas. Eastland.
April 14, 1933.

Rehearing Denied May 12, 1933.

Scarborough, Ely & King, of Abilene, and F. C. Dickey, of Ballinger, for appellant.

Wagstaff, Harwell, Wagstaff & Douthit, of Abilene, for appellees.

HICKMAN, Chief Justice.

Appellant is the surviving widow of S. H. Meek, who died in Runnels county on October 26, 1929. At the time of the marriage of appellant to S. H. Meek, she was a widow with one son, and Meek a widower with one daughter, who is the appellee, Mrs. Lee Tinkle. There were born to Mr. and Mrs. Meek during their marital union three children: Joe D. Meek, a son, Mrs. Mildred Allen and Mrs. Vida Tinkle, daughters. A little more than nine months before the death of S. H. Meek he and his wife, the appellant, executed deeds to lands and transfers of vendor's lien notes to appellee Mrs. Lee Tinkle, and to Mrs. Mildred Allen and Mrs. Vida Tinkle, making an equal distribution of the bulk of their community estate to these three daughters. As a part of the same transaction, they executed a joint will which was probated after the death of S. H. Meek, and by the terms of which the residue of the estate, after the conveyances to the three daughters, passed to the appellant. These instruments were dated January 15, 1929.

The instant suit was instituted in the district court of Runnels county, and, on account of the disqualification of the trial judge, was transferred to and tried in the district court of Taylor county, One hundred fourth judicial district. At the conclusion of the testimony, and after appellant had been permitted to file a trial amendment, the court peremptorily instructed a verdict in favor of appellees, Mrs. Lee Tinkle and husband, Dr. Fred Tinkle, and judgment was accordingly entered that appellant take nothing, from which judgment this appeal has been prosecuted.

In her first amended original petition, upon which she went to trial, appellant alleged in substance that she and her deceased husband

322

accumulated a community estate of the value of more than $150,000; that about November 1, 1922, she became ill, and was required to go under the care of a physician; that she went to the home of her youngest daughter, Mrs. Vida Tinkle, at Dallas, where she became virtually confined to her bed; that her deceased husband, S. H. Meek, remained in Runnels county looking after the estate and making his home with his daughter, the appellee Mrs. Lee Tinkle; that appellant was in ill health for fifteen years preceding her husband's death, and unable to attend to business, and the appellee Mrs. Lee Tinkle began about fifteen years ago counseling and advising her father and persuading him, without appellant's knowledge or consent, to give her, the appellee, various and sundry sums of money out of the community estate of appellant and her husband; that during said years said appellee, in collusion with appellant's husband, and without appellant's knowledge or consent, did procure from said community estate various sums of money totaling more than $45,000; that about three years before the death of S. H. Meek, and while he was residing in the home of appellees, he began writing letters to appellant proposing that they make disposition of the community property during their lifetime; that, upon the advice and counsel of each of the appellees, Dr. and Mrs. Tinkle, appellant's husband proposed to her that they divide their community property by gift and transfer among their two daughters, Mrs. Mildred Allen and Mrs. Vida Tinkle, and appellant's stepdaughter, Mrs. Lee Tinkle, appellee herein, her said husband representing to her that his daughter, Mrs. Lee Tinkle, was entitled to a community interest in the estate at the date of her mother's death; that appellant's husband represented to her that, if she would join him in the conveyances to the three daughters, there would be left in the community estate property in excess of the value of that conveyed to the appellee.

The petition described two tracts of land aggregating about 275 acres conveyed to appellee, and also described certain vendor's lien notes which were transferred to her by appellant and her husband at the same time that the deeds and transfers were made to their two daughters and the will was executed. It was alleged that, at the time of the execution of said deeds, transfers, and will, the appellees and S. H. Meek represented to appellant that there was at that time community property of the value of approximately $40,000 in the form of vendor's lien notes and money in banks, in addition to the properties conveyed to the three daughters, which said sum would pass to appellant under the terms of the will; that she relied upon such representations, and with knowledge that said sums of money "purported to be left to her to pass by the terms of the will by the deceased

had already been theretofore conveyed and transferred to the said defendants herein, signed and executed said conveyances to the said defendant, Lee Tinkle; and that she never discovered that the said deceased, S. H. Meek, and the defendants herein were misleading her and that said sums had been converted and procured until after the death of her husband."

It was further alleged that "all during said time the defendants herein, through the said S. H. Meek, were appropriating and converting" from said community estate various sums of money without appellant's consent, and that both of the appellees and appellant's husband represented that nothing had been taken from that estate, thereby leading appellant to believe that such estate still existed and had not been depreciated, and that property of the value of $45,000 would pass to her under the terms of said will. She alleged her inability to name specific dates and amounts that community funds were procured by appellees acting in collusion with her husband and in fraud of her rights, but alleged that the appellees had knowledge of such facts. But it was averred that the total sum of the money so converted, together with the value of the property so converted, "equals to and exceeds the sum of $45,000.00."

Follow then allegations designed to show appellant's right to a rescission of the deeds and transfers executed to Mrs. Lee Tinkle on the date of the execution of the will. We do not find it necessary to set out the allegations seeking this remedy because we understand by the brief that it is not contended that such remedy was available. The necessary parties were not before the court to support a judgment of cancellation and rescission, and appellant did not tender what she had received under the will. This phase of the case will not, therefore, be further noticed.

At the conclusion of the testimony, appellant, by leave of the court, filed a trial amendment, which, omitting the introduction and the signature of counsel, is as follows:

"Comes now the plaintiff and by way of trial amendment and in addition to the plaintiff's first original amended petition, and represents to the Court that the plaintiff and S. H. Meek were the owners in their joint rights as community property an estate of the value of approximately $150,000.00, most of which was situated in Runnels County, Texas.

"That plaintiff and S. H. Meek owned jointly a large tract of land of the approximate value of $85,000.00, and a large amount of notes and cash.

"That S. H. Meek was afflicted with an incurable disease and was living with the defendant Lee Tinkle, and that she urged him to make a division of the estate, and to give to her one-third interest therein.

"That in truth and in fact Mrs. Lee Tinkle was the daughter of S. H. Meek, but was not the daughter of the plaintiff.

"That the said Lee Tinkle and S. H. Meek requested this plaintiff to join in an agreement to give the land and part of the notes to Mrs. Lee Tinkle and the two daughters of S. H. Meek and plaintiff, and to divide the same equally.

"That the said Lee Tinkle and S. H. Meek represented to this plaintiff that there would be an estate of approximately $45,-000.00 to $50,000.00 for this plaintiff, and this plaintiff relied upon said representations, and believed such representations to be true and relied upon said representations.

"She joined S. H. Meek in the division of the land and about $9,000.00 in notes, giving said property to her two daughters and the defendant, Lee Tinkle.

"That said representations made to this plaintiff by Lee Tinkle and S. H. Meek that she would have an estate of $45,000.00 was false and fraudulently made to this plaintiff to induce her to join in said division and that this plaintiff relying upon said representations did join in said division and did believe that she would receive the said sum of the value of $45,000.00 in cash.

"That in truth and in fact said representations were false and fraudulently made, and that the plaintiff herein joined her husband in the joint will, providing that she should have the residue of the estate of the approximate value of $45,000.00.

"That in truth and in fact she did receive, under the will $2,700.00, and did not receive the $45,000.00 as she believed she would receive when she signed the deed to Mrs. Tinkle.

"This plaintiff alleges that the difference in the value of what she did get and what she should have gotten, under the representations made, was $42,300.00, and that this plaintiff has been damaged in the sum of $42,-300.00, by virtue of the fraudulent representations hereinbefore alleged, and each and all alleged.

"And this plaintiff sues for damages in the sum of $42,300.00, as damages to her sustained by reason of the false and fraudulent representations made to her that induced her to sign the deed in question, making the division alleged."

The judgment recites that appellant by her attorney "in open court announced that she would not rely on her cause of action sued on insofar as it related to damages for conversion of community property of herself and her deceased husband, without her knowledge and consent, and that the plaintiff would rely in this cause upon damages for false representations inducing the plaintiff to execute the will, deeds and conveyances dated January 15th, 1929, and for a rescission of the deeds and conveyances executed to the defendant, Lee Tinkle, of said date." As above noted, an action for rescission was not available to appellant. Since she waived the cause of action pleaded in her amended petition for damages based upon the allegations that appellee Lee Tinkle had, in collusion with S. H. Meek, fraudulently extracted property from the community estate, only one alleged ground of recovery was left available to her, and that the one pleaded in her trial amendment.

■ The theory upon which damages were sought in the amended petition was that, prior to the execution of the deeds, transfers, and will on January 15, 1929, the community estate had been depleted by fraudulent gifts to appellee Mrs. Lee Tinkle, so that there did not remain a residue of $45,000, and damages were sought on the ground that a fraud had been perpetrated upon appellant's community rights by a collusion between S. H. Meek and Mrs. Lee Tinkle. Appellant was unable to make proof to support this theory of recovery, and abandoned same. We are not certain as to what theory of recovery was adopted in the trial amendment. The allegations are that appellant and her husband were the owners of a community estate of the value of approximately $150,000; that they conveyed lands of that estate of the approximate value of $85,000.00 and notes of the value of $9,-000 to the three daughters. Under these allegations, there would remain of the community estate more than $50,000. If these allegations are true, and we must so regard them in construing the trial amendment because they are allegations of fact made by appellant herself, then the representation alleged to have been made by appellees and S. H. Meek to the effect that $45,000 of the estate remained after the conveyances and transfers could not be a false representation.

■■ Besides, appellant's own testimony is not in harmony with the theory that false representations as to the value of the residue of the estate were made at the time that she executed the conveyances, transfers, and will. She testified that she did not claim or believe that her husband made any false statement to her; that he was not that kind of man; that she was not there to say that kind of thing; that he did tell her at the time the will was drawn and the papers signed that there would be $40,000 or $50,000 coming to her under the will, and that she believed it; but that she had been searching for it and had been unable to find it. The following testimony was brought out on questions by her own counsel:

"Q. Have you ever been able to find the $40,000.00 or $50,000.00? A. Why, sure, I have been searching for it.

"Q. Still trying to find it? A. Why, sure, I think it is somewhere—I don't know where.

"Q. You don't think your husband misled you? A. No, I don't."

She could not exonerate her husband on the ground that the community estate actually had $40,000 or more remaining after the conveyances and at the same time convict appellees of fraud for making the same representation which he made. If S. H. Meek committed no fraud, neither did appellees. Appellant and her husband were in a better position to know the value of their own estate than were the appellees.

We think this record as a whole presents a situation where the appellant feels that the estate left her by the will of her deceased husband has been wrongfully taken by some one, but the evidence wholly fails to establish liability against appellees for such alleged taking.

It is our opinion that the peremptory instruction was properly given, and the judgment of the trial court will be accordingly affirmed.